Filed 11/30/20  Zagorovskaya v. B & V Enterprises CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TATIANA ZAGOROVSKAYA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>B & V ENTERPRISES, INC., et al.,<br><br>Defendants and Respondents. | B294269<br><br>(Los Angeles County<br>Super. Ct. No. LC104715) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Virginia C. Keeny, Judge.  Affirmed.

———————————————

Tatiana Zagorovskaya, in pro. per., for Plaintiff and Appellant.

Fisher & Phillips, Todd B. Scherwin and Sarina Saluja for Defendants and Respondents.

———————————————

Plaintiff and appellant Tatiana Zagorovskaya challenges the trial court's grant of summary judgment in favor of defendants and respondents B & V Enterprises, Inc. (dba Super King Market) (B & V), Vartan Gulasarian, and Meldis Shaverdian (collectively, defendants). Zagorovskaya, who worked at a Super King Market (Super King) owned by B & V, claimed that Shaverdian sexually harassed, assaulted, and battered her at work. She also claims that B & V violated the California Occupational Safety and Health Act (Lab. Code, § 6300 et seq.) (OSHA) by requiring her to do her job without proper safety equipment, leading her to injure her hand while cutting salami at a meat-slicing machine. We affirm.

## FACTS AND PROCEEDINGS BELOW

Because this is an appeal of a grant of summary judgment in favor of defendants, we describe the evidence "in the light most favorable to the opposing party," Zagorovskaya. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

Zagorovskaya began working as a deli clerk at Super King in November 2015. Shaverdian worked at the deli counter as well and showed Zagorovskaya how to use the deli equipment; Zagorovskaya viewed Shaverdian as a supervisor. Beginning in late January 2016, Zagorovskaya had a number of encounters with Shaverdian that made her feel uncomfortable. On two occasions, Shaverdian touched Zagorovskaya on the backside. On a third occasion, Shaverdian grabbed Zagorovskaya's face "in a fit of passion," in a way Zagorovskaya perceived as sexual. Zagorovskaya believed Shaverdian wanted to have a closer relationship with her, but Zagorovskaya kept her distance. On a fourth occasion, on February 19, 2016, Shaverdian sprayed cleaning solution directly at Zagorovskaya's face. After a while,

2

Shaverdian began walking away and told Zagorovskaya, "Leave." On February 21, Shaverdian assigned Zagorovskaya excessive cleaning duties to perform that she did not normally have to do.

The next day, February 22, 2016, Zagorovskaya injured her fingers while cutting salami on a meat-slicing machine. She was not using a hand guard or wearing protective gloves at the time of the injury because Super King required employees to cut meats at an angle, which precluded using a hand guard. As a result of the injury and Shaverdian's conduct, Zagorovskaya suffered emotional distress and was unable to continue working. Gulasarian is the store manager of Super King, to whom Zagorovskaya reported her injury. Gulasarian refused to call 911 for approximately 40 minutes after the injury, then asked another employee to drive Zagorovskaya to the hospital.

Zagorovskaya did not report Shaverdian's conduct to management at Super King. Nor did she complain about any OSHA violations regarding the meat-slicing equipment. Following her injury, Zagorovskaya filed a workers' compensation claim and took a workers' compensation related leave of absence.

On October 5, 2016, Zagorovskaya filed suit against B & V, Shaverdian, and Gulasarian. She alleged causes of action for sex and gender based harassment under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), assault, battery, failure to provide safe working conditions pursuant to OSHA, and intentional infliction of emotional distress. Defendants filed motions for summary judgment or summary adjudication.[1] The trial court granted

---

[1] Unlike the other two defendants, who filed motions for summary judgment, Shaverdian moved for summary

3

the motions, finding that Zagorovskaya failed to demonstrate a triable issue of material fact as to any of the causes of action in question.

## DISCUSSION

Zagorovskaya contends that the trial court abused its discretion by rejecting certain evidence she offered. She also contends that the trial court erred on the merits by granting summary judgment in favor of defendants. We disagree and affirm.

### A.     Evidentiary Objections

Zagorovskaya contends that the trial court erred by refusing to consider evidence relevant to the summary judgment motion. We review the trial court's evidentiary rulings for abuse of discretion. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) We consider each of these evidentiary questions in turn.

#### 1.     *Declaration of Meri Aroutioinuan*

Zagorovskaya contends that the trial court erred by refusing to consider a declaration of Zagorovskaya's coworker Meri Aroutioinuan. In the declaration, Aroutioinuan corroborated Zagorovskaya's allegations that employees at Super King were required to cut deli meats at an angle, and that this precluded the use of a safeguard. She also stated that the deli-counter employees wore thin, nonprotective gloves while cutting meat. In addition, she stated that Shaverdian was

adjudication on two of the four causes of action alleged against her, but not for the claims of assault and battery.

4

an assistant manager at the deli department and delegated duties to employees. This contradicted a declaration by a representative of B & V that Shaverdian was merely a coworker.

The trial court rejected the declaration because it was not made under penalty of perjury. In any declaration submitted in court, the declarant must state that the declaration "is certified or declared by him or her to be true under penalty of perjury." (Code Civ. Proc., § 2015.5.) The trial court excluded Aroutioinuan's declaration on the ground that it did not comply with this requirement. Instead, Aroutioinuan stated, "I declare *under the laws of the State of California* that the foregoing is true and correct." (Italics added.)

We need not decide whether the court erred by refusing to consider the declaration because any error would be harmless. The question of whether Shaverdian was Zagorovskaya's supervisor was relevant to Zagorovskaya's sex and gender harassment claim, but its resolution would not have affected the decision on summary judgment. In claims under FEHA, an employer is strictly liable for sexual harassment by a supervisor. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1040–1041.) When the misconduct is committed by coworkers or others, by contrast, the plaintiff must show that management knew or should have known of the harassment. (*Ibid*.) But in this case, the trial court correctly determined as a matter of law that Shaverdian's alleged actions were insufficiently severe or continuous to create a hostile work environment. We explain this issue in more detail in the Discussion part B.2, *post*.

Zagorovskaya claims that Shaverdian's status as her supervisor was also relevant to B & V's liability for assault

5

and battery under a doctrine of respondeat superior, but this is incorrect. The doctrine of respondeat superior makes an employer "vicariously liable for the torts of its employees committed within the scope of the employment." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296.) In this case, the assault and battery Zagorovskaya alleges that Shaverdian committed against her were personal in nature and had nothing to do with Shaverdian's duties on the job. "[W]here the undisputed facts would not support an inference that the employee was acting within the scope of his employment," the court may find the doctrine inapplicable as a matter of law. (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 447.) The trial court did not err by making such a determination in this case.

Zagorovskaya cites *Meyer v. Graphic Arts International Union* (1979) 88 Cal.App.3d 176 for the proposition that an employer may be vicariously liable for intentional torts committed by an employee, but in that case, the plaintiff alleged that the employees who attacked her were acting within the scope of their employment. (*Id.* at p. 178.) Zagorovskaya has produced no such evidence in this case.

### 2.     *Video Evidence*

Zagorovskaya contends that the trial court erred by stating that Zagorovskaya "was told there were video cameras recording the incidents but she is unable to provide any such evidence." Zagorovskaya notes that she provided a video showing that there are video cameras installed at the deli department of Super King. That may be so, but Zagorovskaya has failed to produce any relevant recordings from the video cameras, and she has failed to show that B & V obstructed her from obtaining the recordings.

### B. Summary Judgment

Zagorovskaya raises a number of other challenges to the trial court's grant of summary judgment. We first describe the law applicable to summary judgment in general, then address each of Zagorovskaya's claims individually.

### 1. *Basic Principles of Law*

Summary judgment is proper when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 370; *Aguilar*, *supra*, 25 Cal.4th at p. 843; Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears an initial burden of showing that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action. (*Nealy v. City of Santa Monica*, *supra*, 234 Cal.App.4th at p. 370; *Aguilar*, *supra*, 25 Cal.4th at p. 849.) If the defendant meets this burden, the plaintiff has the burden to demonstrate one or more triable issues of material fact as to the cause of action or defense. (*Aguilar*, *supra*, at p. 849.) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

In reviewing summary judgment, "[w]e review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017–1018.)

7

## 2. *Sexual Harassment Claim*

We agree with the trial court that Shaverdian's conduct as Zagorovskaya describes it was "not sufficiently severe or pervasive to constitute a hostile work environment under the FEHA." In her deposition, Zagorovskaya alleged that Shaverdian touched her bottom on two occasions, and that on a third occasion, she grabbed Zagorovskaya's face in a fit of passion. When Zagorovskaya kept her distance, Shaverdian retaliated by spraying her in the face with cleaning fluid and by assigning her extra cleaning tasks.

As the trial court noted, the facts in this case are similar to two others in which courts found that harassment allegations were insufficient as a matter of law. In *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, a supervisor made two sexual comments to the plaintiff, and on a third occasion, he put his arm around her and rubbed against her breast. (*Id.* at p. 144.) The court reasoned that the supervisor's actions "demonstrate[d] rude, inappropriate, and offensive behavior. To be actionable, however, a workplace must be ' "permeated with 'discriminatory intimidation, ridicule and insult,' [citation] that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " ' " (*Id.* at p. 145.) The supervisor's actions simply did not meet that threshold. (*Ibid.*) Similarly, in *Haberman v. Cengage Learning, Inc.* (2009) 180 Cal.App.4th 365, the court affirmed a grant of summary judgment in favor of a defendant on a sexual harassment claim. One of the defendants made a number of sexual comments to the victim over a period of months, but the court held that these were too isolated, sporadic, and trivial to make for a hostile workplace. (*Id.* at p. 385.) In

this case, Zagorovskaya testified that "it wasn't clear to" her at first what Shaverdian meant by touching her bottom. Furthermore, Zagorovskaya acknowledged that Shaverdian never made any comments to her about her gender. These actions are not sufficiently severe to make for a hostile workplace.

Zagorovskaya contends that the trial court erred by concluding that there were discrepancies regarding Zagorovskaya's allegations of Shaverdian's conduct between the testimony in her deposition and in a declaration she later filed. We disagree. We have reviewed the trial court's opinion, as well as Zagorovskaya's deposition testimony and declaration, and we do not find that the trial court materially misrepresented Zagorovskaya's statements.

### 3. *Workers' Compensation Exclusivity*

The trial court denied Zagorovskaya's causes of action for failure to provide safe working conditions (see Lab. Code, §§ 6401, 6403) and for intentional infliction of emotional distress on the ground that workers' compensation provides "the sole and exclusive remedy of the employee or his or her dependents against the employer" for injuries suffered on the job. (Lab. Code, § 3602, subd. (a).)

Zagorovskaya contends that this was error on the ground that claims of intentional misconduct are not subject to the workers' compensation exclusivity doctrine. We disagree. Our Supreme Court has established "a tripartite system for classifying injuries arising in the course of employment. First, there are injuries caused by employer negligence or without employer fault that are compensated at the normal rate under the workers' compensation system. Second, there are injuries

9

caused by ordinary employer conduct that intentionally, knowingly or recklessly harms an employee, for which the employee may be entitled to extra compensation under [Labor Code] section 4553.  Third, there are certain types of intentional employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought." (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 713–714.)  The injury Zagorovskaya suffered at the meat-slicing machine was at most in the second category. Even if B & V intentionally exposed her to dangerous working conditions by requiring her to work without necessary safety equipment, the conduct was within the boundaries of the compensation bargain, and Zagorovskaya's sole remedy was workers' compensation.  (See *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160.)  The situations in which a civil action may be brought for injuries suffered on the job are not at all like those Zagorovskaya alleges she experienced.  (See *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 902.)

Zagorovskaya also argues that B & V may be liable for civil damages for her injury at the meat slicer under two sections of the Labor Code.  Section 4553 provides for increased damages "where the employee is injured by reason of the serious and willful misconduct" of the employer.  (Lab. Code, § 4553.)  But that statute applies exclusively to workers' compensation claims. (*Arendell v. Auto Parts Club, Inc.* (1994) 29 Cal.App.4th 1261, 1264.)  Similarly, Labor Code section 4558 allows employees to file suit against employers who cause injury or death by removing or failing to install safety guards on power presses.  But the statute defines power press as "any material-forming machine that utilizes a die which is designed for use in the manufacture

of other products." (Lab. Code, § 4558, subd. (a)(4).) The meat-slicing machine Zagorovskaya operated does not fit this definition.

Nor does *Solus Industrial Innovations, LLC v. Superior Court* (2018) 4 Cal.5th 316 (*Solus*) provide Zagorovskaya with a private right of action for the injury she suffered at the meat-slicing machine, contrary to Zagorovskaya's claim. In *Solus*, the Court held that the federal OSHA did not preempt California's unfair competition law with respect to claims based on workplace safety and health violations. Zagorovskaya did not bring a claim under the unfair competition law.

### 4. *Intentional Infliction of Emotional Distress against Gulasarian*

Zagorovskaya contends that the trial court erred by granting summary judgment in favor of Gulasarian, the store manager at Super King, on Zagorovskaya's cause of action for intentional infliction of emotional distress. We disagree.

"A cause of action for [intentional infliction of emotional distress] requires proof of: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the severe emotional distress. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050 . . . .)

"A defendant's conduct is considered to be outrageous if 'it is so " ' "extreme as to exceed all bounds of that usually tolerated in a civilized community." ' " ' " (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1007 (*Crouch*).) Another explanation of the relevant standard

11

comes from a comment to the Restatement Second of Torts, section 46: " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' (Rest.2d Torts, § 46, com. d, p. 73.)" (*Crouch, supra*, 39 Cal.App.5th at p. 1007.)

Gulasarian's actions with respect to Zagorovskaya simply do not rise to this level. Zagorovskaya declared that when she reported her finger injury to Gulasarian, he refused to call 911 and told Zagorovskaya to drive herself to the hospital. Approximately 40 minutes later, Gulasarian asked an employee to drive Zagorovskaya to the hospital. Her evidence, however, does not show that her injuries were so severe that she needed to be taken to the hospital in an ambulance. Further, there is insufficient evidence in the record to support an inference that Gulasarian knew of Shaverdian's alleged misconduct toward Zagorovskaya.

## DISPOSITION

The judgment of the trial court is affirmed.  Respondents are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.